UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURIE OTT<br>    *Plaintiff*, | )  3:20-CV-00321 (KAD)<br>)<br>) |
| v. | )<br>) |
| KILOLO KIJAKAZI, Acting<br>Commissioner of the Social Security<br>Administration[1]<br>    *Defendant*. | )<br>)<br>)<br>)  July 26, 2021 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER OR TO REMAND TO THE COMMISSIONER (ECF NO. 16) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (ECF NO. 18)**

Kari A. Dooley, United States District Judge

Laurie Ott ("Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand this matter for further proceedings. The Commissioner moves for an order affirming her decision. For the reasons set forth below, the Court DENIES the Plaintiff's motion to reverse the decision of the Commissioner or, in the alternative, to remand to the Commissioner and GRANTS the Commissioner's motion to affirm the decision.

---

[1] Plaintiff commenced this action against Andrew M. Saul as the Commissioner of Social Security on March 11, 2020. (ECF No. 1). Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to FED. R. CIV. P. 25(d), Commissioner Kijakazi is automatically substituted for Andrew M. Saul as the named defendant. The Clerk of the Court is requested to amend the caption in this case accordingly.

**Standard of Review**

A person is "disabled" under the Act if that person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3). In addition, a claimant must establish that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment" or combination thereof that "must have lasted or must be expected to last for a continuous period of at least 12 months"; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform her past relevant work; and (5) if the claimant is unable to perform her past work, the Commissioner must next determine

whether there is other work in the national economy which the claimant can perform in light of her RFC and her age, education, and work experience. *Id*. §§ 404.1520(a)(4)(i)–(v), 404.1509. The claimant bears the burden of proof with respect to Step One through Step Four, while the Commissioner bears the burden of proof as to Step Five. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). It is well-settled that a district court will reverse the decision of the Commissioner "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks and citation omitted). "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quotation marks and citation omitted). "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The Court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of*

*Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and can only reject the Commissioner's findings of fact "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*) (quotation marks and citation omitted). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

**Procedural History**

On May 25, 2017, Plaintiff filed an application for DIB pursuant to Title II of the Act alleging an onset date of April 5, 2017. The claim was denied initially on September 13, 2017, and upon reconsideration on March 23, 2018. Thereafter, a hearing was held before an ALJ on December 12, 2018. On January 10, 2019, the ALJ issued a written decision denying Plaintiff's application.

In his decision, the ALJ followed the sequential evaluation process for assessing disability claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 5, 2017. At Step Two, the ALJ determined that Plaintiff had medically determinable severe impairments consisting of status post right knee arthroplasty; left shoulder glenohumeral arthritis; L4-5 anterolisthesis; obesity; history of traumatic brain injury (TBI); and depressive disorder. At Step Three, the ALJ determined Plaintiff's severe impairments do not meet or medically equal the listings in 20 CFR Part 404, Subpart P, Appendix 1. At Step Four, the ALJ determined that the Plaintiff had the following RFC:

> [Plaintiff has the RFC] to perform light work as defined in 20 CFR 404.1567(b) except: The claimant can stand/walk up to four hours total and sit for up to six hours. The claimant requires a sit/stand option wherein she sits for 30 minutes, alternates to standing position for five minutes, and then resumes sitting. The claimant may [n]ever climb ladders/ropes/scaffolds. The claimant may occasionally climb stairs/ramps, balance, stoop, and crouch. The claimant may never kneel/crawl. The claimant cannot perform any overhead reaching with left arm. The claimant may frequently handle/finger with the left hand (non-dominant)

4

and she has no limits with the right hand. The claimant may not work in exposure to cold/wetness. The claimant can perform simple, routine, repetitive tasks. The claimant can sustain concentration, persistence, and pace for two-hour segments. The claimant may have occasional interaction with coworkers and the public. The claimant will need work with little/no changes in duties/routines. The claimant may have no work requiring independent judgment (no setting duties/schedules for others, no responsibility for the safety of others).

(R. 20). The ALJ further found that Plaintiff was unable to perform any past relevant work as a dental assistant or nurse assistant. At Step Five, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff could perform despite the limitations identified in the RFC. Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged onset date through the date of the decision within the meaning of the Act.

On January 13, 2020, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's January 10, 2019 decision final. This appeal followed.

**Discussion**

Plaintiff suffers from several physical and mental impairments, which individually, and in the aggregate, create significant challenges for her. This is clear from a reading of the record and clearly acknowledged by the ALJ in his decision. But the question here is whether Plaintiff's impairments rendered her disabled under the Act from the alleged onset date through the date of the ALJ's decision. In seeking reversal of the Commissioner's decision, Plaintiff argues that the ALJ erred in three ways: (1) the ALJ erroneously found that Plaintiff's right knee impairment did not meet Listing 1.02; (2) the ALJ improperly substituted his own opinion for the medical sources' opinions when formulating Plaintiff's RFC; and (3) the ALJ failed to incorporate particular limitations into Plaintiff's RFC. For the reasons below, the Court disagrees with Plaintiff and finds that the ALJ appropriately found that Plaintiff was not disabled under the Act.

**Substantial Evidence Supports the ALJ's Finding that Plaintiff's Right Knee Impairment Did Not Meet Listing 1.02**

Plaintiff challenges the ALJ's conclusion that her right "knee osteoarthritis"[2] did not meet Listing 1.02 for a major dysfunction of a joint. To meet Listing 1.02, in pertinent part, Plaintiff must show:

> [A major dysfunction of a joint] [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 (2020).[3] An "[i]nability to ambulate effectively" is "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id*. § 1.00B2b1. Additionally, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*. Significantly, "[t]he inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months." *Id*. § 1.00B2a.

---

[2] The ALJ identified this impairment as "Status Post Right Knee Arthroplasty." (R. 18).

[3] On December 3, 2020, the Social Security Administration promulgated final rules "revising the criteria in the Listing of Impairments (listings) [used] to evaluate claims involving musculoskeletal disorders in adults and children under titles II and XVI of the Social Security Act[.]" *See Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164 (Dec. 3, 2020). These rules were made effective on April 2, 2021. The new rules apply to applications filed on or after the effective date and to claims pending on or after the effective date. Because Plaintiff filed her application before this date and because the ALJ's decision became final on January 13, 2020, the Court does not apply the new rules.

The ALJ provided little explanation for his finding that Plaintiff's impairment did not meet Listing 1.02. (R. 18). As a result, Plaintiff argues that the case should be remanded because the ALJ failed to make specific findings as to Plaintiff's osteoarthritis and, significantly, whether Plaintiff's impairment improved post-surgery. However, although "an ALJ should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment, the absence of an express rationale for an ALJ's conclusions does not prevent [the Court] from upholding them so long as [it is] able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112–13 (2d Cir. 2010) (summary order) (internal quotation marks and citation omitted) (finding that "although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination").

Here, other portions of the ALJ's decision identify credible evidence supporting the ALJ's finding that Plaintiff's right knee condition did not meet Listing 1.02. Specifically, there is substantial evidence that Plaintiff's inability to ambulate effectively did not last for at least 12 months. Plaintiff argues that she became unable to ambulate effectively as of April 2017 when she sustained a right knee injury. However, in February 2018, Plaintiff underwent right knee replacement surgery. (R. 583–84). Post-surgery, by March 2018, Plaintiff had full extension in her right knee and only very mild swelling. (R. 745). Then, on April 9, 2018, there was no visible swelling and Plaintiff retained full extension in her right knee. (R. 747). Dr. James I. Spak even noted that Plaintiff "may be as active as comfort permits." (R. 747). On July 23, 2018, Dr. Spak cleared Plaintiff to work as a homecare certified nurse aide. (R. 752). Subsequent records indicate

that Plaintiff ambulated normally and had a normal gait. (R. 758–59). The ALJ also considered Plaintiff's hearing testimony. On December 12, 2018, Plaintiff testified that she had not "used a cane in a few months since [she] had a partial knee replacement in February" and that she worked full time at Goodyear Tire for five months at the beginning of 2018 (within 12 months of the alleged onset of her disability). (R. 41, 43–44). Plaintiff's daily activities also indicate an ability to ambulate effectively. (R. 47–48 (Plaintiff does her own laundry and goes grocery shopping once a week)).

To argue that the ALJ erred in finding that her right knee condition did not meet Listing 1.02, Plaintiff principally relies on evidence pre-dating her February 2018 surgery. Such evidence, while probative of whether Plaintiff **ever** had an inability to ambulate effectively, is not probative as to the duration of this condition, i.e., whether it lasted 12 months. Additionally, the evidence Plaintiff cited post-surgery does not undermine the Court's conclusion that the ALJ's decision on this issue is supported by substantial evidence. For example, two days after the surgery, Plaintiff notes that she presented for a follow-up appointment using a walker. (R. 585). Plaintiff also notes that, at her March 8, 2018 appointment, Dr. Spak indicated that Plaintiff was still having some pain in her calf and that Plaintiff was "overdoing it a bit" with her physical therapist, which explained her discomfort. (R. 745). Plaintiff further points out that she was prescribed ibuprofen and Vicodin, (R.745), and that, in April 2018, she still had knee soreness and trouble with stairs, (R. 747). Lastly, on May 10, 2018, although Plaintiff still had pain, the treatment note indicated that "she finds her pain to be vastly less than it was preoperatively." (R. 750).  No doubt, this evidence might support a contrary conclusion or give the Court reason to believe that it might have ruled differently. But that is not reason enough to reverse the Commissioner's decision. *Campbell*, 596 F. Supp. 2d at 448 ("[A] court must uphold the Commissioner's decision if it is supported by

substantial evidence, even if the court might have ruled differently."). Indeed, while this evidence reveals that Plaintiff's knee continued to cause her discomfort and impact her mobility, it does not require the conclusion that she had an "inability to ambulate effectively" as that phrase is defined under the Act.

### The ALJ did not Rely on His Own Opinion to the Exclusion of the Medical Sources' Opinion Evidence

Plaintiff next argues that the ALJ committed legal error insofar as he substituted his own opinion for the medical sources' opinions in formulating Plaintiff's RFC. *See Kurlan v. Berryhill*, No. 3:18-CV-00062 (MPS), 2019 WL 978817, at *1 (D. Conn. Feb. 28, 2019) ("It is well established that an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." (internal quotation marks and citation omitted)). The Commissioner counters that the ALJ properly followed the applicable regulations in evaluating the persuasiveness of every medical opinion in the record.[4] The Commissioner asserts that Plaintiff merely offers an alternative evaluation of the medical sources' opinion evidence, which is not enough to warrant remand. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner."). The Court agrees with the Commissioner.

#### *Dr. Liese Franklin-Zitzkat*

First, the ALJ considered the August 2017 opinion of consultative examiner Dr. Liese Franklin-Zitzkat. (R. 447–53). According to Dr. Franklin-Zitzkat's medical source statement,

---

[4] Significantly, because Plaintiff filed her claim after March 27, 2017, the new regulation regarding the consideration of medical opinions and prior administrative medical findings applies. *See* 20 C.F.R. § 404.1520c.

9

Plaintiff "would likely have moderate difficulty attending to instructions," but "seems capable of understanding instructions." (R. 450). Additionally, although Plaintiff "exhibited only mild difficulty . . . on a brief task intended to screen for short-term memory problems, . . . based on her self-report and the specific examples she provided, [Dr. Franklin-Zitzkat] would expect [Plaintiff] to have marked difficulty remembering instructions in a work setting." (R. 450). Dr. Franklin-Zitzkat also noted that Plaintiff would likely have "marked difficulty concentrating and completing tasks accurately"; "moderate to marked difficulty withstanding the stresses and pressures of a routine work day from a psychological standpoint"; and, at times, "marked difficulty responding appropriately to supervisors, coworkers, and the general public." (R. 450). On the other hand, Dr. Franklin-Zitzkat found that Plaintiff "should be able to adapt to changes insofar as the aforementioned problems do not interfere"; "seems capable of making decisions but might not always follow through on the decisions she knows to be appropriate"; and "seems capable of maintaining attendance." (R. 450–51).

The ALJ found Dr. Franklin-Zitzkat's evaluation to be not persuasive because (1) it relied on the Plaintiff's "own statement to derive that [she] has marked limits in her ability to remember instructions or withstand normal work pressures," and (2) it was inconsistent "with the other consultative examination[.]" (R. 23).

Plaintiff criticizes the ALJ's findings regarding Dr. Franklin-Zitzkat's evaluation and further asserts that, as a result of his determination, he "was left with no opinion on which to rely when composing [Plaintiff's RFC] assessment." (ECF No. 16-1 at 15). However, as the Commissioner correctly observes, the ALJ did not completely disregard Dr. Franklin-Zitzkat's conclusions and, in fact, incorporated some of them into Plaintiff's RFC. For example, consistent with Dr. Franklin-Zitzkat's finding that Plaintiff, at times, "would likely have marked difficulty

10

responding appropriately to supervisors, coworkers, and the general public," (R. 450), the RFC limited the Plaintiff to having "occasional interaction with coworkers and the public," (R. 20). Additionally, consistent with Dr. Franklin-Zitzkat's finding that Plaintiff "would likely have moderate to marked difficulty withstanding the stresses and pressures of a routine work day from a psychological standpoint," (R. 450), the ALJ recognized that Plaintiff "will need work with little/no changes in duties/routines," (R. 20). It is consistent with the regulations guiding the evaluation of medical source opinions for the ALJ to not fully adopt Dr. Franklin-Zitzkat's conclusions. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Accordingly, the Court finds no legal error in the ALJ's evaluation of Dr. Franklin-Zitzkat's opinion.

### *Dr. Julie Keen*

Next, the ALJ considered the January 2018 opinion of consultative examiner Dr. Julie Keen. (R. 563–70). Dr. Keen found, "based on psychological/cognitive factors only," that Plaintiff was (1) not impaired in her ability to understand and remember simple instructions and to carry them out; (2) slightly impaired in her ability to make judgments on simple work-related decisions, understand and remember complex instructions, and interact appropriately with supervisors; (3) moderately impaired in her ability to carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, interact appropriately with co-workers, and to respond appropriately to usual work situations and changes in routine; and (4) significantly impaired in her ability to maintain concentration, attention, and pace. (R. 568).

The ALJ found Dr. Keen's evaluation to be partially persuasive. (R. 23). The ALJ accepted Dr. Keen's findings that Plaintiff had "no impairment in her ability to carry out simple tasks" and

that she had "moderate limitations in her ability to interact with coworkers." (R. 23). Critically, though, the ALJ did "not accept that [Plaintiff] ha[d] marked limitations in her ability to maintain concentration, persistence, and pace." (R. 23). In so finding, the ALJ specifically noted Plaintiff's "past work history that was skilled and semiskilled." (R. 23).

Plaintiff argues that the ALJ erred by substituting his opinion for Dr. Keen's opinion, presumably, insofar as the ALJ did not accept Dr. Keen's finding that Plaintiff had significant limitations in her ability to maintain concentration, attention, and pace. While the Court agrees with Plaintiff that Dr. Keen's finding in this regard appears to be supported by objective testing (*see*, *e.g.*, R. 567 (finding Plaintiff's processing speed to be extremely low)), the ALJ did not wholly reject Dr. Keen's finding. The RFC includes non-exertional limitations such as (1) suggesting that Plaintiff "can perform simple, routine, [and] repetitive tasks," (2) limiting Plaintiff to "work with little/no changes in duties/routines," and (3) noting that Plaintiff "can sustain concentration, persistence, and pace for [only] two-hour segments." (R. 20). Once again, Plaintiff appears to argue that the ALJ should have adopted Dr. Keen's findings as his own and his failure to do so was therefore a substitution of his own opinion for that of Dr. Keen. *But see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Indeed, Plaintiff asserts that "Dr. Keen's opinion is entitled to significant weight," (ECF No. 16-1 at 14), despite the regulatory directive that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."

20 C.F.R. § 404.1520c(a). Accordingly, the Court finds that the ALJ did not err in his evaluation of Dr. Keen's opinion, to include the extent to which it influenced the RFC determination.

### *Dr. James I. Spak*

Lastly, Plaintiff argues that the ALJ erred by failing to evaluate the opinion of her treating orthopedic surgeon, Dr. Spak, dated April 9, 2018. (R. 749, hereinafter "Work Status Report"). In response, the Commissioner asserts that Plaintiff's argument fails because there is no indication in the record that the Work Status Report is, in fact, Dr. Spak's opinion. The Work Status Report is not signed by Dr. Spak despite there being a space for his signature. (R. 749). Indeed, the genesis of the document is largely unknown. The Court also agrees with the Commissioner that it appears that the Work Status Report was completed by the Plaintiff, which further undermines any reliance upon it absent Dr. Spak's signature affirming the representations therein. Further, as the Commissioner points out, to the extent the document indicates certain physical limitations, those limitations were clearly temporary insofar as Dr. Spak opined on July 23, 2018 that Plaintiff was "cleared to work at a homecare CNA." (R. 752). Lastly, Plaintiff asserts that Dr. Spak's "opinion" (assuming the Work Status Report actually contained Dr. Spak's opinion) is entitled to "controlling weight," but, as discussed above, under the applicable regulations, the ALJ does not give controlling weight to any medical opinions, to include those from medical sources. *See* 20 C.F.R. § 404.1520c(a). For these reasons, the ALJ did not err by failing to include an evaluation of the Work Status Report in his decision.

### **The ALJ did not Err in Formulating Plaintiff's RFC**

Plaintiff argues that the ALJ erred by failing to incorporate the following relevant factors into her RFC: (1) sedentary exertion with a sit/stand option; (2) manipulative limitations; and (3) off-task behavior and absenteeism.

### *Sedentary Exertion with a Sit/Stand Option*

In Plaintiff's RFC, the ALJ provides that Plaintiff "can stand/walk up to four hours total and sit for up to six hours" and that Plaintiff "requires a sit/stand option wherein she sits for 30 minutes, alternates to standing position for five minutes, and then resumes sitting." (R. 20). Plaintiff asserts that these limitations do not adequately reflect her needs. Plaintiff argues that she should be limited to sitting no more than 2-4 hours a day with the ability to stand and walk around every 10-30 minutes and to recline as needed. In support, Plaintiff cites to her hearing testimony, record evidence, and again relies upon the Work Status Report, asserting that it should be controlling insofar as it indicates that Plaintiff is able to sit 2-4 hours a day. (R. 749). However, for the reasons discussed above, the ALJ's treatment (or lack thereof) of the Work Status Report was proper under the circumstances and, under the applicable regulations, the Work Status Report cannot be given "controlling weight." *See* 20 C.F.R. § 404.1520c(a). And, although Plaintiff clearly disagrees with the RFC, she advances no argument that the ALJ's RFC determination is not supported by substantial evidence. The Court will not remand a case merely because Plaintiff points to evidence ostensibly supporting an alternative conclusion. *See generally Yancey*, 145 F.3d at 111; *Brault*, 683 F.3d at 448 (The Court can reject the Commissioner's findings of fact "only if a reasonable factfinder would *have to conclude otherwise*." (internal quotation marks and citation omitted)). Thus, Plaintiff has identified no reversible error.

### *Manipulative Limitations*

In Plaintiff's RFC, the ALJ noted that Plaintiff "cannot perform any overhead reaching with [her] left arm" and that she "may frequently handle/finger with the left hand (non-dominant) and she has no limits with the right hand." (R. 20). Plaintiff asserts that the ALJ should have limited her to no reaching in any direction with her left arm and to occasional handling/fingering with her

left hand. Plaintiff argues that the record evidence supporting her position is uncontradicted and that the jobs identified by the vocational expert would not have been available to her had the ALJ included these limitations in her RFC.

To the contrary, there is evidence in the record supporting the ALJ's findings of less severe limitations associated with Plaintiff's left upper extremity. Plaintiff testified that she can reach in front of her with her left arm.[5] (R. 58). She testified that she can use her fingers for things like buttons, zippers or sorting coins, though she indicated she drops a lot of things. (R. 58). She testified that she can hold onto larger things like an orange or a grapefruit and could shuffle and deal a deck of cards, albeit slowly and without repetition. (R. 58–59). Additionally, on May 18, 2017, when Plaintiff complained of left shoulder pain to Dr. Patrick A. Ruwe and presented "for continued complaints of numbness, sense of heaviness, and weakness in her upper extremity," Dr. Ruwe noted that Plaintiff's "shoulder complaints remain minimal and unchanged" and that "[s]he ha[d] no significant degenerative change in the shoulder with some underlying non-full-thickness changes in her rotator cuff." (R. 419). Then, according to what appear to be treatment notes from August 23, 2017, Plaintiff presented with left shoulder pain and noted a significant loss of range of motion in the same. (R. 510). Although the treatment notes indicate that Plaintiff would be best treated with a shoulder replacement, the physical exam also appears to indicate that Plaintiff's strength in her left upper extremity was scored as 4 out of 5 while Plaintiff's strength in her right upper extremity was scored as 5 out of 5. (R. 510–12). Moreover, although treatment notes from September 12, 2017 indicate that Plaintiff was in severe pain, (R. 501), treatment notes from October 6, 2017 indicate that Plaintiff was doing better insofar as she felt that the "new

---

[5] Plaintiff also testified that she could not raise her left arm laterally (i.e., reaching to her left). (R. 61). Even crediting this testimony, the Vocational Expert testified that the jobs she identified as available in the national economy would still be available to Plaintiff. (R. 77–78).

15

exercise[s] are doing well," (R. 475), and others from October 10, 2017 indicate that Plaintiff "[c]ontinues with good tolerance to advancing exercise challenges/work load," (R. 471).

To be sure, the record includes evidence supporting significant limitations associated with Plaintiff's left upper extremity. (*See*, *e.g.*, R. 499–503 (treatment note from September 12, 2017 noting what appear to be significant left shoulder issues, to include a 70% disability score); R. 577 (February 1, 2018 treatment note indicating that Plaintiff "demonstrates significant decreased range of motion with pain to resisted external rotation and scaption")).[6] Plaintiff's testimony also described significant pain and limitations with respect to her left arm and hand. However, the ALJ did include substantial, albeit lesser, limitations in Plaintiff's RFC to account for Plaintiff's left shoulder condition and, as discussed above, the Court cannot conclude that the determination in this regard is not supported by substantial evidence. *See Marquez v. Colvin*, No. 12-Civ-6819 (PKC), 2013 WL 5568718, at *14 (S.D.N.Y. Oct. 9, 2013) ("Where, as here, the ALJ conforms with applicable law and SSA regulations, and the ALJ's decision is supported by substantial evidence, this court will not second-guess his judgment even in cases where there is substantial evidence to the contrary."). Therefore, the Court finds no error with respect to the RFC's limitations regarding Plaintiff's left upper extremity.

### *Off-Task Behavior and Absenteeism*

Plaintiff also argues that she has many impairments that cause absenteeism and off-task behavior in herself and others. Plaintiff appears to attribute these limitations to her anger, focus, and concentration issues, which she claims are supported by Dr. Keen's and Dr. Franklin-Zitzkat's findings regarding her difficulties, *inter alia*, concentrating and responding appropriately to others.

---

[6] Plaintiff also cites the Work Status Report to suggest that Dr. Spak opined that she could never grasp with her left hand. (R. 749). As discussed above, there is nothing indicating that the Work Status Report is Dr. Spak's opinion. Further, even if the Work Status Report is Dr. Spak's opinion, there is substantial evidence in the record supporting the ALJ's RFC determination with respect to Plaintiff's limitations attributable to her left shoulder condition.

Plaintiff also asserts that the limitations associated with her left shoulder condition would cause her to work slower than an average worker. Thus, she argues, the ALJ erred insofar as he failed to include Plaintiff's "off-task behavior due to pain, bursts of anger, and absenteeism related to pain, in his RFC description." (ECF No. 16-1 at 22).

The Court disagrees with Plaintiff. In substance, Plaintiff repeats her argument regarding the ALJ's failure to accept Dr. Keen's and Dr. Franklin-Zitzkat's opinions. As discussed above, the ALJ properly evaluated those opinions and included limitations related to Plaintiff's concentration and ability to interact with others in the RFC, just not to the degree that she would have preferred or she believes was warranted.[7] Failing to formulate the RFC to Plaintiff's liking is not reversible error. *See Yancey*, 145 F.3d at 111 ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner."). Because the ALJ incorporated limitations addressing Plaintiff's ability to remain present and on-task into the RFC, and because those limitations are supported by substantial evidence, Plaintiff's argument that the ALJ's decision must be reversed for failing to find more severe limitations fails.

**Conclusion**

For the foregoing reasons, Plaintiff's motion to reverse the decision of the Commissioner or to remand to the Commissioner is DENIED. The Commissioner's motion to affirm the decision is GRANTED.

---

[7] The ALJ also observed that the Plaintiff has not sought "any mental health treatment on a regular basis" and that the treatment notes in the record "do not show any loss of cognition, memory, or concentration." (R. 22).

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of July 2021.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE